B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) 19·90028·MM |
|---|---|

| PLAINTIFFS Gregory Kelly (In Proper Person) | DEFENDANTS Randall Mark Hickman and Virginia E. Hickman |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Gregory Kelly PO Box 7132 Tempe, AZ 85281 (480) 799-9218 | **ATTORNEYS** (If Known) *FILED MAR -7 PM 2: CLERK U.S. BANKRUPTCY SO. DIST. OF CALI* |
| **PARTY** (Check One Box Only) ☐ Debtor  ☑ Creditor  ☐ Trustee  ☐ U.S. Trustee/Bankruptcy Admin  ☐ Other | **PARTY** (Check One Box Only) ☑ Debtor  ☐ Creditor  ☐ Trustee  ☐ U.S. Trustee/Bankruptcy Admin  ☐ Other |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §523, TO DENY DISCHARGE UNDER 11 U.S.C. §727, AND FOR DECLARATORY RELIEF UNDER 28 U.S.C. §2201, et seq.

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 - Recovery of money/property – § 542 turnover of property
☐ 12 - Recovery of money/property – § 547 preference
☐ 13 - Recovery of money/property – § 548 fraudulent transfer
☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner – § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability – § 523(a)(1),(14),(14A) priority tax claims
☑ 62 - Dischargeability – § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability – § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability – § 523(a)(5), domestic support
☐ 68 - Dischargeability – § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability – § 523(a)(8), student loan
☐ 64 - Dischargeability – § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et.seq.
☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 49,385.25 |
| Other Relief Sought | |

B1040

B1040 (Page 2) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>RANDALL MARK HICKMAN and VIRGINIA E. HICKMAN | | BANKRUPTCY CASE NO.<br><br>BK-18-07207-MM7 |
| DISTRICT IN WHICH CASE IS PENDING<br><br>SOUTHERN DISTRICT OF CALIFORNIA | DIVISIONAL OFFICE<br><br>SAN DIEGO | NAME OF JUDGE<br><br>JUDGE MARGARET M. MANN |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>MARCH 06, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>GREGORY KELLY | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B1040

FILED

**2019** MAR -7  PM 2: 27

CLERK
U.S. BANKRUPTCY CT.
SO. DIST. OF CALIF.

Gregory Kelly
PO. Box 7132
Tempe, AZ 85281
In Proper Person
(480) 799-9218
isovegas@yahoo.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | ) Case No.: BK-18-07207-MM7 |
| | ) |
| RANDALL MARK HICKMAN and | ) Chapter 7 |
| | ) |
| VIRGINIA E. HICKMAN | ) ADV. PROCEEDING NO._____ |
| | ) |
| Debtors, | ) DEPT: |
| | ) |
| ――――――――――――――――― | ) JUDGE: |
| | ) |
| GREGORY KELLY, | ) **COMPLAINT TO DETERMINE THE** |
| | ) **DISCHARGEABILITY OF DEBT UNDER** |
| Plaintiff, | ) **11 U.S.C. §523, TO DENY DISCHARGE** |
| v. | ) **UNDER 11 U.S.C. §727, AND FOR** |
| | ) **DECLARATORY RELIEF UNDER 28** |
| RANDALL MARK HICKMAN and | ) **U.S.C. §2201, et seq.** |
| | ) |
| VIRGINIA E. HICKMANS | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |
| | ) |
| ――――――――――――――――― | ) |

    Comes now, Plaintiff Gregory Kelly ("Plaintiff"), creditor of Randall Mark Hickman

("Randy") and Virginia E. Hickman ("Virginia") and collectively ("the Hickmans" or

"Defendants"), the above named Debtors and Defendants, and alleges as follows:

## I. JURISDICTION AND VENUE

    1.  This is a core proceeding within the meaning of 28 U.S.C. § § 157(b)(2)(I), (J) and is

brought pursuant to 11 U.S.C. §523 and §727 for the purposes of:

a) Determining that the debt owed to Plaintiff by Defendants is non-dischargeable under 11 U.S.C. §523; and

b) Denying Defendants' Chapter 7 Discharge under 11 U.S.C. §727.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b).

3. Defendants are the Debtor's in this chapter 7 case, which was filed on December 03, 2018.

4. The Deadline to file a complaint for determination of dischargeability is March 11, 2019, so this complaint is timely, and Plaintiff is a creditor of Defendants by virtue of the following facts:

## II.    SPECIFIC ALLEGATIONS

5. In January of 2018, as a condition of withdrawing from Bankruptcy Court, the Hickmans agreed to sell their home at 11273 Golden Chestnut Place, Las Vegas, NV 89135 ("the property").

6. The Hickmans' home was listed on January 14, 2018, and Virginia (who was listed as the sole owner in a community property state) accepted an offer of $700,000 from from ATG Investment Capital, LLC, Series 11 ("ATG").

7. Phillip Alexander ("Alexander") is the managing member of ATG.

8. On February 19, 2018, Virginia signed a Residential Purchase Agreement ("RPA") with ATG for the sale of the property (Exhibit A).

9. The RPA called for a close of escrow by March 31, 2018, and provided legal remedies to both parties in the event of a Default.

ADVERSARY COMPLAINT - 2

10.  At the time Virginia accepted this ATG's $700,000 offer, she knew that she had insufficient equity in the home to close this transaction, based on her debt to Plaintiff in an unrelated case, and her $15,000 debt to her Bankruptcy attorney (the Dias Law Group).

11.  On January 10, 2018, more than 30 days before Virginia signed the RPA, the Hickmans represented to the United States Bankruptcy Court – District of Nevada, that the sale of the property would adequately cover all of their existing debts, as a means of withdrawing the Hickmans' Chapter 7 Bankruptcy Petition (Exhibit B).

12.  At the time Virginia signed the RPA, she knew that there weren't going to be enough proceeds to close the transaction, and knew that she was to pay all creditors, and knew that she was going to be at least $49,000 deficient.

13.  The Hickman's were granted two extensions to the closing date of March 31, 2018 in the RPA, but were in Default for $48,267.05 as of April 04, 2018.

14.  Having already sold his home with the intention of occupying the property as a tenant, and having already purchased new fixtures and furnishings, Alexander had no choice but to sign an Addendum to the RPA which would extend the closing until April 19, 2018.

15.  At no time during the escrow period did the Hickmans ever give Alexander notice that they were unable to produce the funds necessary to close the transaction.

16.  Instead of simply explaining that they didn't have enough equity to honor their RPA, Defendants gave Alexander ridiculous excuses such as a delay in transferring funds from overseas, waiting for the funds from the sale of their son Rory's business, etc.

17.  The final closing date of April 19. 2018 came and went, and the Hickmans still had not come up with the funds necessary to complete the transaction.

18.  With Alexander facing homelessness and huge financial losses, ATG ultimately took out more loans, negotiated a $7,000 reduced real estate commission from Berkshire Hathaway Home Services, and ultimately paid an additional $42,385.25 of the Hickmans' obligation to close the transaction on April 30, 2018.

19.  Pursuant to NRS 104.2210,  on August 06, 2018, ATG assigned their Chose In Action for the Breach of Contract, Fraud, and any other legal claims against the Defendants to Plaintiff.

20.  On August 23, 2018, Plaintiff brought suit against Defendants in Clark County (Nevada) District Court Case # A-18-779920-C, alleging Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment, False Pretenses, False Representation, and Fraud, and for Declaratory Judgment.

21.  On October 11, 2018, after spending thousands of dollars on Attorney Bruce D. Jaques, ("Mr. Jaques"), Defendants signed a Confession of Judgment to Plaintiff for $49,385.25 (Exhibit C).

22.  Notice of Entry of judgment was made on October 23, 2018 (Exhibit D), and the case is not appealable.

23.  Prior to signing this Judgment, Mr. Jaques represented that Defendants would be paying the balance owed within 30 days, in stark contrast to their asset disclosures in the instant bankruptcy case.

24.  Rather than pay the Judgment, Defendants chose to file the instant bankruptcy case on December 03, 2018.

25.  Plaintiff's Judgment is incorrectly listed on Dkt. No. 1, page 22, Part 2, line 4.8 as $42,385.25, rather than $49,385.25, despite multiple notices to Defendants' Attorney.

### III.    GENERAL ALLEGATIONS

26.  The Hickmans have maintained unaccounted cash in the hundreds of thousands of dollars since 2011, largely drawn from the Elkins Family Living Trust ("Elkins Trust"), where Virginia is the Trustee and Beneficiary.

27.  From December of 2011 through November of 2016, the Elkins Trust made hundreds of thousands of dollars of insider payments to Coradell Hickman ("Coradell"), Rory Mark Hickman ("Rory"), Randy, and three of Randy's corporations; National Center For Autism Research and Education, ("NCARE'), RMH Investments Group Inc. ("RMH"), and Hickman Global Initiative Inc. ("HGI").

28. In 2015, the Elkins Trust purchased over $100,000 of automobiles, including one for Rory, without showing the disposition of these vehicles in their bankruptcy petition.

29.  At the time of filing this complaint, the Hickmans have failed to produce Court Ordered Personal Tax Returns or Corporate Tax Returns for NCARE, RMH, and HGI, and a fourth Corporation, Round Table Industries ("RTI") to Plaintiff.

30.  At the time of filing this complaint, the Hickmans have failed to produce all of their Court Ordered Personal Bank Statements, Elkins Trust Bank Statements, and Corporate Bank Statements for NCARE, RMH, and RTI to Plaintiff.

31.  Despite claiming to have no "non-exempt" assets, the Hickmans have continued their 341 meeting of creditors for this instant bankruptcy THREE times.

32. The Hickmans failed to list all of their debts and assets in this petition, including their cash holdings.

33. The Hickmans failed to list their transfers of over TWO MILLION, NINE HUNDRED THOUSAND DOLLARS ($2,900,000) into the Elkins Trust, as well as transfers into the "Hickman Family Trust," ("Hickman Trust"), which is purportedly administered by Coradell.

34. Plaintiff alleges that Randy is the "de-facto" Administer of the Hickman Trust, and that Randy has provided the majority of funding for this trust.

35. Plaintiff alleges that the Elkins Trust and Hickman Trust are not exempt from this bankruptcy, or attachment from creditors.

36. Plaintiff alleges that the Hickmans have hundreds of thousands of dollars being held either in cash, safe deposit boxes, casino chips, undisclosed personal, family trust or corporate bank accounts, overseas bank accounts, or insiders such as Coradell, Rory and others.

37. Plaintiff alleges that NCARE, RMH, HGI, and RTI still have bank accounts, are not permanently revoked, and are therefore undisclosed corporations with respect to the Hickman's bankruptcy petition.

38. Plaintiff alleges that NCARE, RMH, HGI, RTI, the Elkins Trust, and the Hickman Trust have been used to hide hundreds of thousands of dollars from creditors.

39. Plaintiff alleges that NCARE, RMH, and HGI never had any legitimate business purpose or business transactions, and were effectively used by the Hickmans for the **SOLE PURPOSE** of shielding personal assets from creditors.

40. Plaintiff alleges that the Elkins Trust and the Hickman Trust are nothing more than personal bank accounts for Virginia and Randy, but have been effectively used by the Hickmans for the **SOLE PURPOSE** of shielding personal assets from creditors.

41. Plaintiff alleges that while RTI was a business operating in Nevada and California, it also permitted the Hickmans to make hundreds of thousands of dollars disappear through cash withdraws, and has not filed State or Federal Tax Returns from operations.

42. Plaintiff alleges that NCARE, RMH, and HGI have never filed State or Federal Tax returns, throughout their existence, making it nearly impossible for creditors to see the ultimate disposition the hundreds of thousands of dollars of transfers made to these companies.

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(To Determine Non-Dischargeability For Obtaining Funds Through Actual Fraud And False Pretenses under 11 U.S.C. § 523(a)(2)(A))**

43. Plaintiff repeats and re-alleges Paragraphs 1-42, as fully incorporated herein.

44. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a),1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by –

**(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;**

45. Defendants' acceptance of the RPA, including their obligation to deliver clear title to ATG, constituted a legal representation.

46. At the time this representation was made, Defendants knew that they had no intention of paying over $48,000 to clear title, despite being legally obligated to do so.

47. At the time this representation was made, the Defendants did not ask for any type of contingency for them to deliver clear title, and made no disclosures of their potential inability or unwillingness to pay the debts owed on the property.

48. The Defendants intended to deceive ATG into paying their obligations for them, by not disclosing their inability/unwillingness to pay the debts on the property.

49. The Defendants intended to deceive ATG by waiting until ATG had too much time and money invested in the transaction to cancel.

50. The Defendants, at all times, intended for ATG to pay their outstanding debts to clear title, despite their representations under the RPA.

51. ATG justifiably relied on the Defendants' representations in the RPA.

52. ATG has sustained damages of $49,385.25 as a result of Defendants' false pretenses, false representations, or actual fraud, and these damages are non-dischargeable from the instant bankruptcy petition of Defendants.

53. ATG assigned their Choses in Action against Defendants to Plaintiff Gregory Kelly on August 06, 2018 for valuable consideration, and Plaintiff has since obtained a Court Judgment.

54. Plaintiff has incurred costs as a result of Defendants' false pretenses, false representations, or actual fraud, and is entitled to recover these costs from Defendants.

55. Defendants have committed their misconduct with malice, oppression, and fraud, entitling Plaintiff to punitive or exemplary damages.

### SECOND CAUSE OF ACTION
**(To Determine Non-Dischargeability For False
Written Statements under 11 U.S.C. § 523(a)(2)(B))**

56. Plaintiff repeats and re-alleges Paragraphs 1-55, as fully incorporated herein.

57. Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a),1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by –
>
> **(B) use of a statement in writing —**
>
> **(i)** that is materially false;
>
> **(ii)** respecting the debtor's or an insider's financial condition;
>
> **(iii)** on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied;
>
> **(iv)** that the debtor caused to be made or published with intent to deceive;

58. The RPA was a legal, written, contract, representing Virginia's financial ability to deliver clear title of the property to ATG.

59. On the basis of Defendants failure to pay the $49,385.25 deficiencies in closing costs, Virginia's written representations in the RPA were materially false.

60. At the time of signing the RPA, Virginia knew that she had no intention of paying the $49,385.25 deficiencies in closing costs, or didn't have the short term ability to do so.

61. ATG justifiably relied on Virginia's representations in the RPA, and that she would be able to deliver clear title to the property.

62.  Virginia intended to deceive ATG in the RPA, as she was more than aware that there would be a $48,385.25 deficiency in closing costs, at the time of signing it.

63.  Virginia is not a financially incompetent person, and has managed millions of dollars of transactions through the Elkins Trust and her personal accounts since 2010.

64.  Virginia intended to deceive ATG in the RPA, knowing that Alexander would have no choice but to pay the $49,385.25 if he wanted a roof over his head for his family.

65.  ATG sustained damages of $49,385.25 as a result of Virginia's false representations in the RPA, and these damages are non-dischargeable from the instant bankruptcy petition of Defendants.

66.  ATG assigned this claim in perpetuity to Plaintiff, for valuable consideration, and Plaintiff is therefore the damaged party to this Cause of Action, through Court Judgment.

67.  Plaintiff has incurred substantial costs as a result of Defendant's false financial statement, and is therefore entitled to recover these costs from Defendants.

68.  Defendants have committed their misconduct with malice, oppression, and fraud, entitling Plaintiff to punitive and/or exemplary damages.

### THIRD CAUSE OF ACTION
### (Non-Dischargeability For Concealment
### of Property Under 11 U.S.C. § 727(a)(2)(A))

69.  Plaintiff repeats and re-alleges Paragraphs 1-68, as fully incorporated herein.

70.  Bankruptcy Code § 727(a)(2)(A) provides, in relevant part, that:

> (a) The court shall grant the debtor a discharge, unless —
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

**(A) property of the debtor, within one year before the date of the filing of the petition;**

71. The Defendants have made hundreds of thousands of dollars of cash withdraws since 2011, for which there is no final accounting.

72. The Defendants have made hundreds of thousands of transfers to corporate entities of Randy since 2011, which never filed State or Federal Tax Returns, and without any final accounting for these funds.

73. The Defendants have made hundreds of thousands of purchases in automobiles, jewelry, and other consumer goods since 2015, without disclosing a final accounting of these assets in their instant Bankruptcy Petition.

74. Since 2011, the Defendants have made over TWO MILLION, NINE HUNDRED THOUSAND DOLLARS ($2,900,000) of transfers to the Elkins Trust, and Hickman Trust, without any final accounting for these transfers.

75. As recently as October of 2018, Defendants agreed to pay Plaintiff's $49,385.25 Judgment in this case, after paying thousands of dollars of fees to Mr. Jaques.

76. Defendants would not have taken these actions if they were truly indigent, and have failed to disclose the amounts and source of their payments to Mr. Jaques.

77. Less than two months later, rather than disclose their true assets and financial condition under Court Order from the Nevada District Court, Defendants chose to file Chapter 7 Bankruptcy for the second time in two years.

78. On the basis of Defendant's intentional failure to disclose their true assets Defendants' bankruptcy should be dismissed.

//

## FOURTH CAUSE OF ACTION
### (Non-Dischargeability For Concealment Of, Or
### Failure to Keep Records Under 11 U.S.C. §727 (a)(3)

79. Plaintiff repeats and re-alleges Paragraphs 1-78, as fully incorporated herein.

80. Bankruptcy Code § § 727(a)(3) provides that:

> (a) The court shall grant the debtor a discharge, unless —

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

81. Defendants have a long history of concealing records, dating back to Randy's 2007 Bankruptcy in 2007 (in this Honorable Court).

82. In that case, (BK No. 07-02628-LT7). Randy eventually agreed to a non-discharge, based in part, on his concealment of records, and three Adversary Complaints (including the Trustee).

83. In 2017, after filing bankruptcy in Nevada, Defendants chose to sell their fully homesteaded $700,000 home in Las Vegas, rather than produce Rule 2004 Subpoenaed documents to Plaintiff.

84. In late November of 2018, rather than produce financial documents under Court Order from the Nevada District Court, Randy again chose to file Bankruptcy, to prevent disclosure of his financial information.

85. In the instant Bankruptcy case, Defendants have continued their 341 Meeting of Creditors THREE times, despite claims of indigence.

86. In the instant Bankruptcy Case, Defendants were required to deliver financial documents via Subpoenas by January 18, 2019 (Dkt. Nos. 11 and 12).

87. Rather than comply with the Subpoenas, Defendants chose to have their attorney file a frivolous, and legally infirm "Motion to Quash," for the sole purpose of thwarting Plaintiff's Adversary Complaints.

88. This Honorable Court upheld Plaintiff's Subpoenas on February 28, 2019, but Defendants have not complied.

89. At the time of filing this Complaint, Defendants have failed to produce any of the subpoenaed documents which were not already disclosed to them by Plaintiff.

90. At the time of filing this Complaint, Defendants are requesting an additional four weeks to comply with the Subpoenas, without any explanation for their non-compliance.

91. At the time of filing this Complaint, Defendants' attorney refuses to provide written acknowledgment that Defendants are non-compliant with Court Ordered Subpoenas.

92. At the time of filing this Complaint, Defendants' original attorney is attempting to remove himself from his representation of Defendants at a Rule 2004 Examination on March 08, 2019.

93. On the basis of Defendants' long history of refusing to provide financial documents, and refusal to follow Court Orders in different jurisdictions, their bankruptcy should be dismissed.

### FIFTH CAUSE OF ACTION
### (Non-Dischargeability For False Oaths
### or Accounts Under 11 U.S.C. §727 (a)(4)(A)

94. Plaintiff repeats and re-alleges Paragraphs 1-93, as fully incorporated herein.

ADVERSARY COMPLAINT - 13

95.  Bankruptcy Code § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless —

(4) the debtor knowingly and fraudulently, in or in
connection with the case —

**(A) made a false oath or account**

96.  Defendants' instant Bankruptcy Petition was rife with false oaths and accounts from its initial filing, and despite two amendments, **can never be cured**.

97.  At the time of their bankruptcy filing, Defendants were fully aware that they were not listing their proper assets and debts, just as they did in their 2017 Nevada Bankruptcy and 2007 California Bankruptcy (Randy only).

98.  Despite years of subpoenaed bank records obtained by Plaintiff, Defendants have continued to maintain, in two different Bankruptcy filings, that they survive on a mere $1,460 of monthly Social Security Income, rather than the hundreds of thousands of dollars in cash they withdrew from the Elkins Trust, Randy's Corporations, and Virginia's personal accounts from 2011-2017.

99.  Plaintiff alleges that Defendants are in control of hundreds of thousands of cash withdraws since 2011, which were not disclosed on their petition.

100.  Plaintiff alleges that Defendants have control of over a hundred thousand dollars of assets, which were not disclosed on their petition.

101.  Plaintiff alleges that Defendants have cash, casino chips, safe deposit boxes, overseas bank accounts, corporate bank accounts, or third parties holding assets, which were not disclosed on their petition.

102. Plaintiff alleges that the Elkins Trust, and Hickman Trust, have received over TWO MILLION, NINE HUNDRED THOUSAND DOLLARS, ($2,900,000) of transfers from Defendants since 2011, which were not disclosed on their petition.

103. Plaintiff alleges that Defendants have failed to disclose their true debts and assets, and only do so when confronted with evidence that they have attempted to hide from the Bankruptcy Court.

104. Plaintiff alleges that Defendants have bank accounts, either personal, trust, or corporate, which were not disclosed on their petition.

105. Plaintiff alleges that Dkt. No. 1, page 6, Part 6, line 19 is false, as it vastly understates Defendants' assets, that Defendants were aware of this at the time of filing their petition, and Defendants intentionally filed a false petition.

106. Plaintiff alleges that Dkt. No. 1, page 6, Part 6, line 20 is false, as it vastly understates Defendants' liabilities, that Defendants were aware of this at the time of filing their petition, and Defendants intentionally filed a false petition.

107. Plaintiff alleges that Defendants were well aware of their $300,000 Debt to Patty, but chose not to list it in their 2017 or 2018 Chapter 7 Bankruptcies, because they didn't anticipate a collection action.

108. Plaintiff alleges that Dkt. No. 1, page 8, Part 1, lines 1b and 1c are false, as they vastly understate Defendants' assets.

109. Plaintiff alleges that Dkt. No. 1, page 8, Part 2, line 3b is false, as it vastly understates Defendants' liabilities.

110.  Plaintiff alleges that Dkt. No. 1, page 8, Part 3, line 5 is false, as it vastly understates Defendants' monthly expenses.

111.  Plaintiff alleges that Dkt. No. 1, page 8, Part 7, line 5 is false, as Defendant's liabilities were mostly debts originating from business loans, and not consumer debts.

112.  Plaintiff further alleges that Defendants intentionally misrepresented their debt to prevent discovery of Randy's four revoked Corporations (NCARE, RMH, HGI and RTI).

113.  Plaintiff alleges that Dkt. No. 1, page 10, Part 2, line 3 is false, as Defendants own one or more automobiles, currently titled to a third Party.

114.  Plaintiff alleges that Dkt. No. 1, page 10, Part 3, line 6 is false, as the value of Defendants' household furnishings is worth more than $ 3,000.

115.  Plaintiff alleges that Dkt. No. 1, pages 10/11, Part 3, line 7 is false, as the value of Defendants' electronics is worth more than $ 300.

116.  Plaintiff alleges that Dkt. No. 1, page 11, Part 3, line 12 is false, as the value of Defendants' jewelry is worth more than $ 500.

117.  Plaintiff alleges that Dkt. No. 1, page 12, Part 4, line 17 is false, and that Defendants have undisclosed bank accounts not listed on their Bankruptcy Petition.

118.  Plaintiff alleges that Dkt. No. 1, page 12, Part 4, line 25 is false, and that Defendants are the administrators, de-facto Trustees, and beneficiaries of the Elkins Trust and Hickman Trust.

119.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, line 30 is false, and that Defendants are owed money by third parties.

120.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, line 32 is false, and that Defendants are the beneficiaries of the Elkins Trust and Hickman Trust.

121.  Plaintiff further alleges that Defendants have received hundreds of thousands of dollars in distributions from the Elkins Trust and Hickman Trust, and deliberately falsified their bankruptcy petition.

122.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, line 33 is false, and that Defendants have no legal claims against Gregory Kelly (Plaintiff).

123.  Plaintiff further alleges that Dkt. No. 1, page 13, Part 4, line 33 mentions Plaintiff's name purely for the purposes of intimidation and harassment.

124.  Plaintiff alleges that Dkt. No. 1, page 13, Part 4, lines 35 and 36 are false, and that Defendants have not listed all of their assets.

125.  Plaintiff alleges that Dkt. No. 1, page 14, Part 5, lines 37, 38, 39, 40, 41, 42, 43, 44, and 45 are false, and that Defendants have undisclosed assets from NCARE, RMH, HGI, and RTI.

126.  Plaintiff further alleges that NCARE, RMH, HGI, and RTI have not been permanently revoked by the State of Nevada, have never filed final tax returns, and should have been properly disclosed in Defendants' Bankruptcy Petition as assets.

127.  Plaintiff alleges that Dkt. No. 1, page 15, Part 8, lines 56, 57, 58, 59, 61, 62, and 63 are false, and that Defendants have not disclosed all of their assets.

128.  Plaintiff alleges that Dkt. No. 1, pages 16 and 17 (Schedule C) are false with respect to Defendants' alleged possessions, bank accounts, and Claims against Plaintiff on line 2.

129.   Plaintiff alleges that Dkt. No. 1, page 22, Part 2, line 4.8 is false, and that the correct amount owed to Gregory Kelly, (via docketed judgment) is $49,385.25.

130.   Plaintiff alleges that Dkt. No. 1, page 22, Part 4, lines 6i and 6j are false, and that the Defendants owe significantly more money than listed on their petition.

131.   Plaintiff alleges that Dkt. No. 1, page 24, line 2 is false, as Defendants clearly lived in a Community Property State at the time of filing their petition, and for many years earlier.

132.   Plaintiff alleges that Dkt. No. 1, pages 27 – 28, (Schedule J) is false, and that Defendants have significantly higher monthly expenses than listed in their petition.

133.   Plaintiff alleges that Dkt. No. 1, page 31, Part 3, line 6 is false, as Defendants' debts were primarily business debts and not consumer debts.

134.   Plaintiff further alleges that Dkt. No. 1, page 31, Part 3, line 6 is false, because Defendants, or a third party working on their behalf, paid more than $ 600 to attorney Bruce D. Jaques and Move 4 Less Storage in Nevada within 90 days of filing their bankruptcy petition.

135.   Plaintiff further alleges that Defendants have refused to provide documentation of these transactions to Plaintiff, despite Court Ordered Subpoenas.

136.   Plaintiff alleges that Dkt. No. 1, page 32, Part 5, line 13 is false, and that Defendants have gifted assets of $ 600 or more within two years of filing bankruptcy.

137.   Plaintiff alleges that Dkt. No. 1, page 33, Part 7, line 16 is false, as Defendants paid $ 15,000 to the Dias Law Group in April of 2018 for services related to their 2017 Nevada Bankruptcy.

138.  Plaintiff alleges that Dkt. No. 1, page 33, Part 7, line 17 is false, as Defendants paid thousands of dollars to attorney Bruce D. Jaques in 2018 to negotiate a $49,385.25 Confession of Judgment to Plaintiff in Clark County District Court Case No. A-18-779920-C.

139.  Plaintiff further alleges that Defendants claimed to have the ability to pay this Judgment by October 10, 2018, which is in stark contrast to their instant bankruptcy petition.

140.  Plaintiff alleges that Dkt. No. 1, page 33, Part 7, line 18 is false, as Defendants have transferred property to Coradell and Rory within 2 years of filing bankruptcy.

141.  Plaintiff alleges that Dkt. No. 1, page 34, Part 7, line 19 is false, as Defendants have transferred over TWO MILLION, NINE HUNDRED THOUSAND DOLLARS ($2,900,000) to the Elkins Trust within 10 years of filing bankruptcy.

142.  Plaintiff alleges that Dkt. No. 1, page 34, Part 8, line 21 is false, and that Defendants have undisclosed safe deposit boxes, being held in the name of third parties or trusts.

143.  Plaintiff alleges that Dkt. No. 1, page 35, Part 11, line 27 is false, and that Defendants should have listed NCARE, RMH, and HGI in addition to RTI.

### SIXTH CAUSE OF ACTION
**(Declaratory Relief Under 28 U.S.C. § 2201, et seq.)**

144.  Plaintiff repeats and re-alleges Paragraphs 1-143, as fully incorporated herein.

145.  As properly alleged in Paragraphs 1-143, Defendants are not entitled to a Chapter 7 discharge of any debts, and certainly not entitled to discharge Plaintiff's debt of $49,385.25 under 11 U.S.C. §523 (a)(2)(A) and (B).

146.  Defendants dispute these contentions, despite the overwhelming, documented evidence against them.

ADVERSARY COMPLAINT - 19

147.  Plaintiff is entitled to a declaratory judgment against Defendants under 28 U.S.C. § 2201, et seq., finding, concluding, and adjudging that Plaintiff is entitled to all prayers for relief.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.  With respect to the First Cause of Action, an Order that Defendants' indebtedness to Plaintiff, in the amount of $49,385.25 constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523 (a)(2)(A).

2.  With respect to the Second Cause of Action, an Order that Defendants' indebtedness to Plaintiff, in the amount of $49,385.25 constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523 (a)(2)(B).

3.  With respect to the Third Cause of Action, an Order that Defendants' bankruptcy is non-dischargeable pursuant to 11 U.S.C. §727 (a)(2)(A).

4.  With respect to the Fourth Cause of Action, an Order that Defendants' bankruptcy is non-dischargeable pursuant to 11 U.S.C. §727 (a)(3).

5.  With respect to the Fifth Cause of Action, an Order that Defendants' bankruptcy is non-dischargeable pursuant to 11 U.S.C. §727 (a)(4)(A).

6.  With respect to the Sixth Cause of Action, an Order entering judgment for Plaintiff and granting declaratory relief under 28 U.S.C. § 2201, et seq., including, without limitation, that Plaintiff's $300,000 Claim is non-dischargeable.

7.  An Order granting reasonable attorney fees, costs, expenses, and any other equitable relief that the Court deems just and proper.

//

ADVERSARY COMPLAINT - 20

Dated this 6th day of March, 2019.

PREPARED AND SUBMITTED

BY: _____
Gregory Kelly
PO. Box 7132
Tempe, AZ 85281
(480) 799-9218
In Proper Person

# EXHIBIT A

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F514E





## RESIDENTIAL PURCHASE AGREEMENT

(Joint Escrow Instructions)

Date: _____ 02/19/18 _____

ATG Investment Capital LLC, Series 11 _____ ("Buyer"), hereby offers to purchase
11273  GOLDEN CHESTNUT PL _____ ("Property"), within the
city or unincorporated area of _____ LAS VEGAS _____, County of _____ CLARK _____, State of Nevada,
Zip _____ 89135 _____, A.P.N. # _____ 164-11-612-009 _____ for the purchase price of $ _____ 700,000.00
( _____ Seven Hundred Thousand _____ dollars) ("Purchase Price") on the terms and conditions
contained herein: BUYER ☐ does –OR– ☒ does not intend to occupy the Property as a residence.

## Buyer's Offer

**1.    FINANCIAL TERMS & CONDITIONS:**

$ 10,000.00    **A. EARNEST MONEY DEPOSIT ("EMD")** is ☐ presented with this offer –OR– ☐ _____
_____ is with Buyer's Agent _____. Upon Acceptance, Earnest Money to be
deposited within one (1) business day from acceptance of offer (as defined in Section 23 herein)    **–OR–**
___ business days if wired to: ☐ Escrow Holder, ☐ Buyer's Broker's Trust Account, **–OR–** ☐ Seller's
Broker's Trust Account. *(NOTE: It is a felony in the State of Nevada—punishable by up to four years in prison and a
$5,000 fine—to write a check for which there are insufficient funds. NRS 193.130(2)(d).)*

$ _____    **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____. The
additional deposit ☐ will –OR– ☐ will not be considered part of the EMD. (Any conditions on the additional
deposit should be set forth in Section 28 herein.)

$ _____    **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A NEW LOAN:**
☐  Conventional, ☐  FHA, ☐  VA, ☐  Other (specify) _____.

$ _____    **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO ASSUME THE
FOLLOWING EXISTING LOAN(S):**
☐  Conventional, ☐  FHA, ☐  VA, ☐  Other (specify) _____.
Interest: ☐ Fixed rate, _____ years – OR – ☐ Adjustable Rate, _____ years. Seller further agrees to
provide the Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer
within FIVE (5) calendar days of acceptance of offer.

$ _____    **E. BUYER TO EXECUTE A PROMISSORY NOTE SECURED BY DEED OF TRUST PER TERMS
IN THE "FINANCING ADDENDUM"** which is attached hereto.

$ 690,000.00    **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in Good Funds to be paid prior to
Close of Escrow ("COE").

$ 700,000.00    **G. TOTAL PURCHASE PRICE.** (This price DOES NOT include closing costs, prorations, or other fees
and costs associated with the purchase of the Property as defined herein.)

THIS SPACE INTENTIONALLY LEFT BLANK

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name: _____ ATG Investment Capital LLC, Series 11 _____     BUYER(S) INITIALS: [ *pa* ] / _____

Property Address: _____ 11273  GOLDEN CHESTNUT PL _____     SELLER(S) INITIALS: *Ụ H* / _____

Rev. 07/17                    ©2017 Greater Las Vegas Association of REALTORS®                    Page 1 of 10

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F814E

**2.      ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

**A.      NEW LOAN APPLICATION:** Within **N/A** business days of Acceptance, Buyer agrees to (1) submit a completed loan application to a lender of Buyer's choice and (2) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt to income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer shall use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

**B.      APPRAISAL CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon the property appraising for not less than the Purchase Price. If after the completion of an appraisal by a licensed appraiser, Buyer receives written notice from the lender or the appraiser that the Property has appraised for less than the purchase price (a "Notice of Appraised Value") Buyer may attempt to renegotiate or cancel the RPA by providing written notice to the Seller (with a copy of the Appraisal) no later than **N/A** calendar days following the date of Acceptance of the RPA; whereupon the EMD shall be released to the Buyer without the requirement of written authorization from Seller. **IF this Residential Purchase Agreement is not cancelled, in writing on or before the Appraisal Deadline, Buyer shall be deemed to have waived the appraisal contingency.**

**C.      LOAN CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon Buyer obtaining the loan referenced in Section 1(C) or 1(D) of the RPA unless otherwise agreed in writing. Buyer shall remove the loan contingency in writing, attempt to renegotiate, or cancel the RPA by providing written notice to the Seller no later than **N/A** calendar days following the date of Acceptance of the RPA; whereupon the EMD shall be released to the Buyer without the requirement of written authorization from Seller. **IF this Residential Purchase Agreement is not cancelled, in writing on or before the Loan Contingency Deadline, Buyer shall be deemed to have waived the loan contingency.**

**D.      CASH PURCHASE:** Within **1** business days of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

**3.      SALE OF OTHER PROPERTY:**

**A.**        This Agreement is NOT contingent upon the sale of any property owned by the Buyer. –OR–

**B.**        ☐ (if checked): The attached Contingent Upon Sale Addendum is hereby incorporated into this agreement.

**4.      FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 7(F) of this Agreement, all items are transferred in an "AS IS" condition. All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s) including ranges/ovens, window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(es), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s);

The following additional items of personal property: **Refrigerator**

**5.      ESCROW:**

**A.      OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after Acceptance of this Agreement ("Opening of Escrow"), at **Jenn Dela Rosa** title or escrow company ("Escrow Company" or "ESCROW HOLDER") with **Lawyer's Title of Nevada** ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement. ESCROW HOLDER is instructed to notify the Parties (through their respective Agents) of the opening date and the Escrow Number.

**B.      EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited pursuant to the language in Section 1(A) and 1(B) if applicable.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **ATG Investment Capital LLC, Series 11**

Property Address: **11273 GOLDEN CHESTNUT PL**

BUYER(S) INITIALS: **ʃa** / 

SELLER(S) INITIALS: **UH** / 

This form presented by Phillip Alexander | Realty Pros | 323-459-8951 | Phil@Phillipalexander.com

InstanetFORMS

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F614E

**C.    CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on or before: _____03/31/18_____ (date). If the designated date falls on a weekend or holiday, COE shall be the next business day.

**D.    IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

**6.    TITLE INSURANCE:** This Purchase Agreement is contingent upon the Seller's ability to deliver, good and marketable title as evidenced by a policy of title insurance, naming Buyer as the insured in an amount equal to the purchase price, furnished by the title company identified in Section 5(A). Said policy shall be in the form necessary to effectuate marketable title or its equivalent and shall be paid for as set forth in Section 8(A).

**7.    BUYER'S DUE DILIGENCE:** Buyer's obligation is ____ is not __X__ conditioned on the Buyer's Due Diligence as defined in this section 7(A) below. This condition is referred to as the "Due Diligence Condition" if checked in the affirmative, Sections 7 (A) through (C) shall apply; otherwise they do not. Buyer shall have ___0___ calendar days following the date of Acceptance of the RPA (as defined in Section 23 herein) to complete Buyer's Due Diligence. Seller agrees to cooperate with Buyer's Due Diligence. **Seller shall ensure that all necessary utilities (gas, power and water) and all operable pilot lights are on for Buyer's investigations and through the close of escrow.**

**A.    PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, golf courses, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to conduct, non-invasive/ non-destructive inspections of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools; proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone number of the inspector.

**B.    BUYER'S RIGHT TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 7, cancel the Residential Purchase Agreement by  providing written notice to the Seller, whereupon the Earnest Money Deposit referenced in Section 1(A) shall be released to the Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 7, resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**C.    FAILURE TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer fails to cancel the Residential Purchase Agreement or fails to resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 7, **Buyer shall be deemed to have waived the Due Diligence Condition.**

_____*PA*_____ **Buyer's Initials** _ _____ **Buyer's Initials**

**D.    INSPECTIONS:** Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will ensure that necessary utilities (gas, power and water and all operable pilot lights) are

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: ATG Investment Capital LLC, Series 11 _____    BUYER(S) INITIALS: | *PA* | / _____

Property Address: __11273  GOLDEN CHESTNUT PL_____    SELLER(S) INITIALS: UH / _____

Rev. 07/17                    ©2017 Greater Las Vegas Association of REALTORS®                    Page 3 of 10

AuthentiSign ID: 6050080B-A96D-415A-9E1F-D89DD01F614E

1  turned on and supplied to the Property within two (2) business days after Acceptance of this Agreement, to remain on until
2  COE. *It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections.* If any inspection is
3  not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have
4  waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably
5  identified had it been conducted, except as otherwise provided by law. The foregoing expenses for inspections will be paid
6  outside of Escrow unless the Parties present instructions to the contrary prior to COE, along with the applicable invoice.
7
8  (Identify which party shall pay for the inspection noted below either: SELLER, BUYER, 50/50, WAIVED or N/A.)
9

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Energy Audit | Waived | Fungal Contaminant Inspection | Waived | Well Inspection (Quantity) | N/A |
| Home Inspection | Waived | Mechanical Inspection | Waived | Well Inspection (Quality) | N/A |
| Termite/Pest Inspection | Waived | Pool/Spa Inspection | Waived | Wood-Burning Device/ Chimney Inspection | Waived |
| Roof Inspection | Waived | Soils Inspection | Waived | Septic Inspection | N/A |
| Septic Lid Removal | N/A | Septic Pumping | N/A | Structural Inspection | Waived |
| Survey (type): | Waived | Other: | | Other: | |

10
11  **E.    CERTIFICATIONS:** In the event an inspection reveals areas of concern with the roof, septic system, well,
12  wood burning device/chimney or the possible presence of a fungal contaminant, Buyer reserves the right to require a
13  certification.   The expenses for certifications will be paid outside of Escrow unless the Parties present instructions to the
14  contrary prior to COE (along with the applicable invoice). A certification is not a warranty.
15
16  **F.    BUYER'S REQUEST FOR REPAIRS:** It is Buyer's responsibility to inspect the Property sufficiently as to
17  satisfy Buyer's use. Buyer reserves the right to request repairs, based upon the Seller's Real Property Disclosure or items
18  which materially affect value or use of the Property revealed by an inspection, certification or appraisal. Items of a general
19  maintenance or cosmetic nature which do not materially affect value or use of the Property, which existed at the time of
20  Acceptance and which are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise
21  provided in this Agreement. The Brokers herein have no responsibility to assist in the payment of any repair, correction or
22  deferred maintenance on the Property which may have been revealed by the above inspections, agreed upon by the Buyer and
23  Seller or requested by one party.
24
25  **8.    FEES, AND PRORATIONS** (Identify which party shall pay the costs noted below either: SELLER, BUYER, 50/50,
26  WAIVED or N/A.)
27
28  **A.    TITLE, ESCROW & APPRAISAL FEES:**

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Escrow Fees | 50/50 | Lender's Title Policy | N/A | Owner's Title Policy | Seller |
| Real Property Transfer Tax | Seller | Appraisal | N/A | Other: | |

29
30  **B.    PRORATIONS:** Any and all rents, taxes, interest, homeowner association fees, trash service fees, payments
31  on bonds, SIDs, LIDs, and assessments assumed by the Buyer, and other expenses of the property shall be prorated as of the
32  date of the recordation of the deed. Security deposits, advance rentals or considerations involving future lease credits shall be
33  credited to the Buyer. All prorations will be based on a 30-day month and will be calculated as of COE.  Prorations will be
34  based upon figures available at closing.  Any supplementals or adjustments that occur after COE will be handled by the parties
35  outside of Escrow.
36
37  **C.    PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company
38  shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5)
39  business days of receipt thereof.  If Buyer does not object to the PTR within the period specified above, the PTR shall be
40  deemed accepted.  If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business
41  days after receipt of objections to correct or address the objections.  If, within the time specified, Seller fails to have each such
42  exception removed or to correct each such objection, Buyer shall have the option to: (a) terminate this Agreement by providing
43  notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title to the Property as is.  All

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: ATC Investment Capital LLC, Series 11

Property Address: 11273  GOLDEN CHESTNUT PL

BUYER(S) INITIALS: *9a*  /

SELLER(S) INITIALS: *UH*  /

Rev. 07/17                    ©2017 Greater Las Vegas Association of REALTORS®                    Page 4 of 10

This form presented by Phillip Alexander | Realty Pros | 323-459-8951 | Phil@Phillipalexander.com

InstanetFORMS

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F614E

1  title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted Exceptions."
2
3    **D.    LENDER AND CLOSING FEES:  In addition** to Seller's expenses identified herein, Seller will contribute
4  $_____0.00_____ to Buyer's Lender's Fees and/or Buyer's Title and Escrow Fees ☐ **including  –OR–** ☐ **excluding**
5  costs which Seller must pay pursuant to loan program requirements. Different loan types (e.g., FHA, VA, conventional) have
6  different appraisal and financing requirements, which will affect the parties' rights and costs under this Agreement.
7
8    **E.    HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home
9  Protection Plans that provide coverage to Buyer after COE.  **Buyer ☒ waives –OR–** ☐ **requires** a Home Protection Plan with
10  _____N/A_____.  ☐ **Seller –OR–** ☐ **Buyer** will pay for the Home Protection
11  Plan at a price not to exceed $_____0.00_____.  Buyer will order the Home Protection Plan. Neither Seller nor Brokers make
12  any representation as to the extent of coverage or deductibles of such plans.
13
14  **9.    TRANSFER OF TITLE:** Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall
15  tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes,
16  (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public
17  utility easements; and (4) obligations assumed and encumbrances accepted by Buyer prior to COE. Buyer is advised the
18  Property may be reassessed after COE which may result in a real property tax increase or decrease.
19
20  **10.    COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"),
21  **Seller shall provide AT SELLER's EXPENSE the CIC documents as required by NRS 116.4109** (collectively, the "resale
22  package"). Seller shall request the resale package within two (2) business days of Acceptance and provide the same to Buyer
23  within one (1) business day of Seller's receipt thereof.
24
25  •  **Pursuant to NRS 116.4109, Buyer may cancel this Agreement without penalty until midnight of the fifth (5th)**
26    **calendar day following the date of receipt of the resale package.** If Buyer elects to cancel this Agreement pursuant
27    to this statute, he/she must deliver, via hand delivery, prepaid U.S. mail, or electronic transmission, a written notice of
28    cancellation to Seller or his or her authorized agent.
29  •  **If Buyer does not receive the resale package within fifteen (15) calendar days of Acceptance, this Agreement**
30    **may be cancelled in full by Buyer without penalty.** Notice of cancellation shall be delivered pursuant to Section 24
31    of the RPA.
32  •  Upon such written cancellation, Buyer shall promptly receive a refund of the EMD. The parties agree to execute any
33    documents requested by ESCROW HOLDER to facilitate the refund. If written cancellation is not received within the
34    specified time period, the resale package will be deemed approved. Seller shall pay all outstanding CIC fines or
35    penalties at COE.
36
37    **A.    CIC RELATED EXPENSES:**  (Identify which party shall pay the costs noted below either: SELLER,
38  BUYER, 50/50, WAIVED or N/A.)
39

| Type | Paid By | Type | Paid By | Type | Paid By |
|------|---------|------|---------|------|---------|
| CIC Demand | Seller | CIC Capital Contribution | Buyer | CIC Transfer Fees | Buyer |
| Other: _____ | | | | | |

40
41  **11.    DISCLOSURES:**  Within five (5) calendar days of Acceptance of this Agreement, Seller will provide the
42  following Disclosures and/or documents. **Check applicable boxes.**

43  ☒  **Seller Real Property Disclosure Form:** (NRS 113.130)    ☐    **Open Range Disclosure:** (NRS 113.065)

44  ☒  **Construction Defect Claims Disclosure:** If Seller has marked "Yes" to Paragraph 1(d) of the
45    Sellers Real Property Disclosure Form (NRS 40.688)

46  ☐  **Lead-Based Paint Disclosure and Acknowledgment:** required if constructed before 1978 (24 CFR 745.113)

47  ☐  **Other:** (list) _____.
48
49
50

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: ATG Investment Capital LLC, Series 11 _____    BUYER(S) INITIALS: [PA] /

Property Address: 11273 GOLDEN CHESTNUT PL _____    SELLER(S) INITIALS: UH /

Rev. 07/17                    ©2017 Greater Las Vegas Association of REALTORS®                    Page 5 of 10

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F614E

**12.    FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard to race, color, religion, sex, national origin, age, gender identity or expression, familial status, sexual orientation, ancestry, or handicap and any other current requirements of federal or state fair housing laws.

**13.    WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through of the Property within __2__ calendar days prior to COE to ensure the Property and all major systems, appliances, heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure Statement, and that the Property and improvements are in the same general condition as when this Agreement was Accepted by Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on, including all operable pilot lights. If any systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have been completed as agreed, and (c) Seller has complied with Seller's other obligations. **If Buyer elects not to conduct a walk-through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection, except as otherwise provided by law.**

**14.    DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, garage door opener/controls and, if freely transferable, parking permits and gate transponders outside of Escrow, upon COE. Seller agrees to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than ☒ **COE –OR☐**_____. In the event Seller does not vacate the Property by this time, Seller shall be considered a trespasser in addition to Buyer's other legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be considered abandoned by Seller.

**15.    RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift to Buyer.

**16.    ASSIGNMENT OF THIS AGREEMENT:** Unless otherwise stated herein, this Agreement is non-assignable unless agreed upon in writing by all parties.

**17.    CANCELLATION OF AGREEMENT:** In the event this Agreement is properly cancelled in accordance with the terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for any expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction (unless otherwise provided herein or except as otherwise provided by law).

**18.    DEFAULT:**

   **A.    MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the parties agree to engage in mediation, a dispute resolution process, through GLVAR. Notwithstanding the foregoing, in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply. Each party is encouraged to have an independent lawyer of their choice review this mediation provision before agreeing thereto. By initialing below, the parties confirm that they have read and understand this section and voluntarily agree to the provisions thereof.
   BUYER(S) INITIALS: __*PA*__ /_____    SELLER(S) INITIALS: __*UH*__ /_____

   **B.    IF SELLER DEFAULTS:** If Seller defaults in performance under this Agreement, Buyer reserves all legal and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual damages incurred by Buyer due to Seller's default.

   **C.    IF BUYER DEFAULTS: If Buyer defaults in performance under this Agreement, as Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD.** In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default. Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: ATC Investment Capital LLC, Series 11                                    BUYER(S) INITIALS: __*PA*__ /

Property Address: __11273  GOLDEN CHESTNUT  PL__                                    SELLER(S) INITIALS: __*UH*__ /

Rev. 07/17                        ©2017 Greater Las Vegas Association of REALTORS®                        Page 6 of 10

This form presented by Phillip Alexander | Realty Pros | 323-459-8951 | Phil@Phillipalexander.com

InstanetFORMS

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F614E

## Instructions to Escrow

**19.    ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct. If conflicting demands are made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court, and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves. Upon the entry of an order authorizing such Interpleader, ESCROW HOLDER shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein. ESCROW HOLDER's duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement. In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

**20.    UNCLAIMED FUNDS:** In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation. ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

**21.    BROKER'S COMPENSATION/FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third party beneficiary to this Agreement, that certain sum and/or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer via the Multiple Listing Service, any other advertisement or written offer. Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourse against Seller for any commission due. **In addition to any amount due to Buyer's Broker from Seller or Seller's Broker, Buyer ☐ will –OR– ☒ will not pay Buyer's Broker additional compensation in an amount determined between the Buyer and Buyer's Broker.**

**22.    WAIVER OF CLAIMS:** Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations or warranties, unless expressly stated herein. Buyer agrees to satisfy himself/herself, as to the condition of the Property, prior to COE. Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage. Buyer waives all claims against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c) environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.

## Other Matters

**23.    DEFINITIONS:** "Acceptance" means the date that both parties have consented to a final, binding contract by affixing their signatures to this Agreement and all counteroffers and said Agreement and all counteroffers have been delivered to both parties pursuant to Section 24 herein. "Agent" means a licensee working under a Broker or licensees working under a

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: ATG Investment Capital LLC, Series 11 _____         BUYER(S) INITIALS: [9a] / _____

Property Address: 11273  GOLDEN CHESTNUT  PL _____         SELLER(S) INITIALS: [UH] / _____

Rev. 07/17                    ©2017 Greater Las Vegas Association of REALTORS®                    Page 7 of 10

This form presented by Phillip Alexander | Realty Pros | 323-459-8951 |
Phil@Phillipalexander.com

instanetFORMS

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F514E

1   developer. **"Agreement"** includes this document as well as all accepted counteroffers and addenda. **"Appraisal"** means a
2   written appraisal or Notice of Value as required by any lending institution prepared by a licensed or certified professional.
3   **"Bona Fide"** means genuine. **"Buyer"** means one or more individuals or the entity that intends to purchase the Property.
4   **"Broker"** means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real estate agents
5   associated therewith). **"Business Day"** excludes Saturdays, Sundays, and legal holidays. **"Calendar Day"** means a calendar
6   day from/to midnight unless otherwise specified. **"CFR"** means the Code of Federal Regulations. **"CIC"** means Common
7   Interest Community (formerly known as "HOA" or homeowners associations). **"CIC Capital Contribution"** means a one-
8   time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. **"CIC Transfer Fees"** means
9   the administrative service fee charged by a CIC to transfer ownership records. **"Close of Escrow (COE)"** means the time of
10  recordation of the deed in Buyer's name. **"Default"** means the failure of a Party to observe or perform any of its material
11  obligations under this Agreement. **"Delivered"** means personally delivered to Parties or respective Agents, transmitted by
12  facsimile machine, electronic means, overnight delivery, or mailed by regular mail. **"Down Payment"** is the Purchase Price
13  less loan amount(s). **"EMD"** means Buyer's earnest money deposit. **"Escrow Holder"** means the neutral party that will
14  handle the closing. **"FHA"** is the U.S. Federal Housing Administration. **"GLVAR"** means the Greater Las Vegas Association
15  of REALTORS®. **"Good Funds"** means an acceptable form of payment determined by ESCROW HOLDER in accordance
16  with NRS 645A.171. **"IRC"** means the Internal Revenue Code (tax code). **"LID"** means Limited Improvement District.
17  **"N/A"** means not applicable. **"NAC"** means Nevada Administrative Code. **"NRS"** means Nevada Revised Statues as
18  Amended. **"Party"** or **"Parties"** means Buyer and Seller. **"PITI"** means principal, interest, taxes, and hazard insurance.
19  **"PMI"** means private mortgage insurance. **"PST"** means Pacific Standard Time, and includes daylight savings time if in
20  effect on the date specified. **"PTR"** means Preliminary Title Report. **"Property"** means the real property and any personal
21  property included in the sale as provided herein. **"Receipt"** means delivery to the party or the party's agent. **"RPA"** means
22  Residential Purchase Agreement. **"Seller"** means one or more individuals or the entity that is the owner of the Property.
23  **"SID"** means Special Improvement District. **"Title Company"** means the company that will provide title insurance. **"USC"** is
24  the United States Code. **"VA"** is the Veterans Administration.
25
26  **24.**    **SIGNATURES, DELIVERY, AND NOTICES:**
27
28       **A.**    This Agreement may be signed by the parties on more than one copy, which, when taken together, each
29  signed copy shall be read as one complete form. This Agreement (and documents related to any resulting transaction) may be
30  signed by the parties manually or digitally. Facsimile signatures may be accepted as original.
31
32       **B.**    When a Party wishes to provide notice as required in this Agreement, such notice shall be sent regular mail,
33  personal delivery, overnight delivery, by facsimile, and/or by electronic transmission to the Agent for that Party. The
34  notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read receipt confirmed in the case
35  of email. Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for Seller or
36  Buyer if represented. Any cancellation notice shall be contemporaneously delivered to Escrow in the same manner.
37
38  **25.**    **IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party
39  electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost
40  to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.
41
42  **26.**    **OTHER ESSENTIAL TERMS:** Time is of the essence. No change, modification or amendment of this Agreement
43  shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This
44  Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and
45  intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties
46  agree that the county and state in which the Property is located is the appropriate forum for any action relating to this
47  Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of
48  any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing
49  party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorney's fees and costs incurred by
50  such prevailing party.
51
52
53        **THIS IS A LEGALLY BINDING CONTRACT. All parties are advised to seek independent legal and tax advice to**
54                                 **review the terms of this Agreement.**
55
56
57

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name: ATG Investment Capital LLC, Series 11 _____    BUYER(S) INITIALS: [PA] / _____

Property Address: 11273 GOLDEN CHESTNUT PL _____    SELLER(S) INITIALS: UH / _____

Rev. 07/17                     ©2017 Greater Las Vegas Association of REALTORS®                Page 8 of 10

Authentisign ID: 6050089B-A96D-415A-9E1F-D89DD01F614E

1  THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS®
2  (GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY
3  PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO
4  ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN
5  APPROPRIATE PROFESSIONAL.
6
7  This form is available for use by the real estate industry. It is not intended to identify the user as a REALTOR®.
8  REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL
9  ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.
10
11
12  27.    ADDENDUM(S) ATTACHED: _____
13  _____`_____
14  28.    ADDITIONAL TERMS: _____
15  _____
16  _____
17  _____
18  _____.
19
20

## Buyer's Acknowledgement of Offer

21
22  Confirmation of Representation: The Buyer is represented in this transaction by:
23
24  Buyer's Broker:    __Joseph Kraemer____    Agent's Name:    __Phillip Alexander__
25  Company Name:    __Realty Pros__    Agent's License Number:    __S.0176647__
26  Broker's License Number:    __B.1001514__    Office Address: 1120 N. Town Center Dr #130
27  Phone:    __323-459-8951 cell__    City, State, Zip:    __Las Vegas    NV  89144__
28  Fax: _____    Email:    __phil@phillipalexander.com__
29
30  BUYER LICENSEE DISCLOSURE OF INTEREST: Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if
31  he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she:
32  ___ DOES NOT have an interest in a principal to the transaction. –OR–
33  _X_ DOES have the following interest, direct or indirect, in this transaction: ☒ Principal (Buyer) –OR– ☐ family or firm
34  relationship with Buyer or ownership interest in Buyer (if Buyer is an entity): (specify relationship)
35  _____Buyer's Agent is a Member of ATG Investment Capital, LLC_____.
36
37  Seller must respond by: __6:30__ (___ AM _X_ PM) on (month) __February__, (day) __20__, (year) __2018__. Unless this
38  Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and
39  time, this offer shall lapse and be of no further force and effect. Upon Acceptance, Buyer agrees to be bound by each
40  provision of this Agreement, and all signed addenda, disclosures, and attachments.
41
42  _Phillip Alexander_    ATG Investment Capital LLC, Series 11    02/19/2018    5:26 PM    AM__PM
43  Buyer's Signature    Buyer's Printed Name    Date    Time
44
45  _____    _____    _____  _____    AM__PM
46  Buyer's Signature    Buyer's Printed Name    Date    Time
47
48
49
50

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name: ATG Investment Capital LLC, Series 11 _____    BUYER(S) INITIALS: [PA] / ___
Property Address: 11273  GOLDEN CHESTNUT PL _____    SELLER(S) INITIALS: [UH] / ___

Rev. 07/17    ©2017 Greater Las Vegas Association of REALTORS®    Page 9 of 10

This form presented by Phillip Alexander | Realty Pros | 323-459-8951 |
Phil@phillipalexander.com

InstanetFORMS

Authentisign ID: 6050080B-A96D-415A-9E1F-D89DD01F814E

## Seller's Response

**Confirmation of Representation:** The Seller is represented in this transaction by:

| | | | |
|---|---|---|---|
| Seller's Broker: | **Forrest L Barbee** | Agent's Name: | **Christopher Koman** |
| Company Name: | **BHHS Nevada Properties** | Agent's License Number: | **S.0046804** |
| Broker's License Number: | **B.0055676** | Office Address: | **7475 W Sahara Ave Ste 100** |
| Phone: | **702-362-1111** | City, State, Zip: | **Las Vegas** NV **89117-2768** |
| Fax: | **702-365-6931** | Email: | **ckoman@msn.com** |

**SELLER LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she:

✗ **DOES NOT** have an interest in a principal to the transaction. –OR–

___ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Seller) –OR– ☐ family or firm relationship with Seller or ownership interest in Seller (if Seller is an entity): (specify relationship)

_____ .

**FIRPTA:** If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to Buyer's FIRPTA Designee a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate.  A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Buyer and Seller understand that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by Buyer's FIRPTA Designee in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the Buyer's FIRPTA Designee the necessary documents, to be provided by the Buyer's FIRPTA Designee, to determine if withholding is required. (See 26 USC Section 1445).

SELLER DECLARES that he/she ✗ **is not** –OR– ___ **is** a foreign person therefore subjecting this transaction to FIRPTA withholding. **SELLER(S) INITIALS:** _UH_ / _____

✗ **ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

___ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.

___ **REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein **is not** accepted.

| | | | |
|---|---|---|---|
| _Virginia E. Hickman_ | **VIRGINIA E HICKMAN** | _2-19-18  6 P.m_ AM___ PM | |
| Seller's Signature | Seller's Printed Name | Date        Time | |
| | | | |
| _____ | _____ | _____ _____ ___ AM___ PM | |
| Seller's Signature | Seller's Printed Name | Date        Time | |

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **ATG Investment Capital LLC, Series 11** _____   BUYER(S) INITIALS: **𝓯𝓪** / _____

Property Address: **11273 GOLDEN CHESTNUT PL** _____   SELLER(S) INITIALS: _UH_ / _____

Rev. 07/17                    ©2017 Greater Las Vegas Association of REALTORS®                    Page 10 of 10

This form presented by Phillip Alexander | Realty Pros | 323-459-8951 |
Phil@Phillipalexander.com                                                    Instanet FORMS

# EXHIBIT B



Honorable Laurel E. Davis
United States Bankruptcy Judge

Entered on Docket
February 26, 2018

NVB 2400C (Rev. 2/16)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

IN RE:                                        BK−17−15525−led
                                              CHAPTER 7
RANDALL M HICKMAN

VIRGINIA E HICKMAN
                                              ORDER ON REAFFIRMATION
                            Debtor(s)         AGREEMENT

                                              Hearing    February 22, 2018
                                              Date:      11:30 AM
                                              Hearing
                                              Time:

The debtor(s) RANDALL M HICKMAN and VIRGINIA E HICKMAN have filed a motion for approval
of the reaffirmation agreement dated January 9, 2018 made between the debtor(s) and GREGORY
KELLY.

The court held the hearing required by 11 U.S.C. Section 524(d) on notice to the debtor(s) and the
creditor on February 22, 2018.

IT IS ORDERED:

☐    The court approves the reaffirmation agreement under 11 U.S.C. Section 524(m).

☐    The court disapproves the reaffirmation agreement under 11 U.S.C. Section 524(m).

☐    The court finds that the reaffirmation agreement is not in the debtor's best interest and
     is disapproved. However, because the court finds the debtor complied with the
     requirements of 11 U.S.C. Sections 362(h) and 521, the debtor may retain the collateral
     so long as the debtor is not otherwise in default.

✔    The court grants the debtor's motion under 11 U.S.C. Section 524(c)(6)(A) and
     approves the reaffirmation agreement described above as not imposing an undue
     hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best
     interest of the debtor(s).

☐    The court grants the debtor's motion under 11 U.S.C. Section 524(k)(8) and approves
     the reaffirmation agreement described above.

☐    All pre−petition warranties, representations and covenants for the benefit of Debtor,
     contained in the underlying purchase agreement, financing agreement or any other

documents with respect to the collateral, shall remain in full force and effect under the reaffirmation agreement. The pre−petition warranties, representations and covenants shall not be modified, waived, cancelled, or voided in any manner as a result of the Debtor entering into the reaffirmation agreement.

☐ Approval of the reaffirmation agreement is conditioned upon an applicable interest rate of ten percent (10%) or less.

☐ Default by the Debtor under the reaffirmation agreement with respect to a vehicle is only enforceable to the extent that (1) the Debtor fails to make a payment as required by the agreement; or (2) the prospect of payment, performance or realization of collateral is significantly impaired. The burden of establishing the prospect of significant impairment is on the creditor. N.R.S. 97.304

☐ In open court, the Debtor withdrew the Reaffirmation Agreement.

☐ Hearing taken off calendar for failure to appear.

☐ Other:

###

# EXHIBIT C

Electronically Filed
10/11/2018 9:31 AM
Steven D. Grierson
CLERK OF THE COURT

Gregory Kelly
PO Box 7132
Tempe, AZ 85281
(480) 799-9218
isovegas@yahoo.com
Plaintiff in Proper Person

# DISTRICT COURT
## CLARK COUNTY NEVADA

**GREGORY KELLY,**

        Plaintiff,

    v.

**Virginia E. Hickman,** and
**Randall M. Hickman,** husband and wife

        Defendants.

**Case No.** A-18-779920-C

**Dept. No.** 17

**Judge:** Hon. Michael P. Villani

## CONFESSION OF JUDGMENT

Comes now, Defendants Virginia E. Hickman and Randall M. Hickman, ("the Hickmans") by and through their attorney Bruce D. Jaques Jr., hereby confess judgment to Gregory Kelly ("Kelly") for an amount of **$49,385.25,** pursuant to NRS 1700.100 for the following reasons:

    1) The Hickmans owed **$49,385.25** to ATG Investment Capital, LLC, Series 11 ("ATG") based on their deficiency in providing clear title to a property at 11273 Golden Chestnut Place, Las Vegas, NV 89135 on April 30, 2018.

    2) ATG assigned its rights for this deficiency to Kelly under NRS 104.2210 for valuable consideration.

-1-

3)  After careful consideration, and in an effort to avoid the expenses of litigation, the Hickmans and Kelly have agreed to settle this case fully for an amount of **$49,385.25**, under the following terms and conditions.

## I.    TERMS AND CONDITIONS

1)  Jurisdiction for this case will remain with the Clark County (NV) District Court, as all of the events of this case occurred in this Jurisdiction.

2)  Kelly will accept the amount of **$42,385.25** as payment in full for this debt, if paid by October 10, 2018.

3)  Kelly **will not file** this Confession of Judgment with the Clark County District Court if he receives **$42,385.25** by October 10, 2018.

4)  Kelly **will not file** this Judgment with any County Recorder or Credit Reporting Agency if **$42,385.25** is received by Kelly, by October 10, 2018.

5)  Provided that Kelly receives **$42,385.25** by October 10, 2018, Kelly will provide the Hickmans with a signed stipulation and order to Dismiss this Case with Prejudice, as shown in **Exhibit A.**

The undersigned hereby agree to this Confession of Judgment and the Terms and Conditions.

Per NRS 53.045:

2.  If executed outside this state, "I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct."

Executed on......9-30-18..............                        *Randall M. Hickman* (signature)
            (date)                                              Randall M. Hickman

Executed on.....9-30-18......................

(date)

_Virginia E. Hickman_ (signature)

Virginia E. Hickman


Executed on.....10/1/18......................

(date)

_Bruce Jaques Jr._ (signature)

Bruce D. Jaques Jr. (Esq.)
California Bar No. 86160
Attorney in Settlement
Capacity Only


Executed on.....9/28/18......................

(date)

_(signature)_

Gregory Kelly
Plaintiff

# EXHIBIT D

Electronically Filed
10/23/2018 8:26 PM
Steven D. Grierson
CLERK OF THE COURT

**NOTC**

1  GREGORY KELLY
   _(Name)_

2  PO BOX 7132
   _(Address)_

3  TEMPE, AZ 85281
   _(City, State, Zip)_

4  (480) 799-9218
   _(Telephone)_

5  ☒ Plaintiff/ ☐ Defendant, _Pro Se_

6

7                    **EIGHTH JUDICIAL DISTRICT COURT**

8                         **CLARK COUNTY, NEVADA**

9  GREGORY KELLY

                                             Case No.:   A-18-779920-C
10                Plaintiff(s),              Dept. No.:   17

11     vs.

12  VIRGINIA E. HICKMAN and

13  RANDALL M. HICKMAN, husband and wife    Date of Hearing: N/A
                                             Time of Hearing: N/A
                  Defendant(s).
14

15            <u>**NOTICE OF ENTRY OF ORDER OR JUDGMENT**</u>

16      PLEASE TAKE NOTICE that the above-entitled Court entered the following ☐ Order or

17  ☒ Judgment:   CONFESSION OF JUDGMENT

18

19

20  on the 11th  day of _____OCTOBER_____, 20 18 . A copy of the Court's Order or Judgment

21  is attached.

22      DATED this 23rd  day of  OCTOBER  , 20 18 .
                                  Per NRS 53.045:
23                                2. If executed outside this state, "I declare under the penalty of perjury under
                                  the law of the State of Nevada that the forgoing is true and correct."
24

25                                                                    _(signature)_
                                    GREGORY KELLY                     _(print name)_
26                                  ☒ Plaintiff/ ☐ Defendant, _Pro Se_

27

28

© 2009 Civil Law Self-Help Center          Page 1
   Clark County, Nevada

                              Case Number: A-18-779920-C

1

## CERTIFICATE OF MAILING

2       I HEREBY CERTIFY that on the __23rd__ day of __OCTOBER_____, 20 _18_ , I placed a true

3   and correct copy of the foregoing **NOTICE OF ENTRY OF ORDER OR JUDGMENT** in the

4   United States Mail, with first-class postage prepaid, addressed to the following:

5               RANDALL M. HICKMAN

6               1322 KELGLEN LANE.

7               VISTA, CA 92084

8               DEFENDANT

9               Per NRS 53.045:
            2. If executed outside this state, "I declare under the penalty of perjury under

10               the law of the State of Nevada that the foregoing is true and correct."

11               _____ *(signature)*

12               GREGORY KELLY      *(print name)*
            x Plaintiff/ ☐ Defendant, *Pro Se*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Electronically Filed
10/23/2018 8:26 PM
Steven D. Grierson
CLERK OF THE COURT

**NOTC**

1    GREGORY KELLY
     *(Name)*

2    PO BOX 7132
     *(Address)*

3    TEMPE, AZ 85281
     *(City, State, Zip)*

4    (480) 799-9218
     *(Telephone)*

5    ☒ Plaintiff/ ☐ Defendant, *Pro Se*

6

## EIGHTH JUDICIAL DISTRICT COURT

7

## CLARK COUNTY, NEVADA

8
     GREGORY KELLY

9                                              Case No.:    A-18-779920-C
                                               Dept. No.:    17

10                  Plaintiff(s),

11        vs.

12   VIRGINIA E. HICKMAN and

13   RANDALL M. HICKMAN, husband and wife
                                               Date of Hearing:  N/A
                    Defendant(s).             Time of Hearing:  N/A
14

15            **NOTICE OF ENTRY OF ORDER OR JUDGMENT**

16        PLEASE TAKE NOTICE that the above-entitled Court entered the following ☐ Order or

17   ☒ Judgment:    CONFESSION OF JUDGMENT

18

19                                                                              ,

20   on the 11th day of ____OCTOBER____, 20 18 . A copy of the Court's Order or Judgment

21   is attached.

22        DATED this 23rd day of _OCTOBER_, 20 18.
          Per NRS 53.045:
23        2. If executed outside this state, "I declare under the penalty of perjury under
          the law of the State of Nevada that the forgoing is true and correct."
24

25                                                                         *(signature)*
                    GREGORY KELLY                                          *(print name)*
26                  ☒ Plaintiff/ ☐ Defendant, *Pro Se*

27

28

© *2009 Civil Law Self-Help Center*                    Page 1
  *Clark County, Nevada*

1

## CERTIFICATE OF MAILING

2     I HEREBY CERTIFY that on the __23rd__ day of __OCTOBER__, 20 _18_, I placed a true

3    and correct copy of the foregoing **NOTICE OF ENTRY OF ORDER OR JUDGMENT** in the

4    United States Mail, with first-class postage prepaid, addressed to the following:

5          VIRGINIA E. HICKMAN

6          1322 KELGLEN LANE.

7          VISTA, CA 92084

8          DEFENDANT

9     Per NRS 53.045:
      2. If executed outside this state, "I declare under the penalty of perjury under
      the law of the State of Nevada that the foregoing is true and correct."

10

11                                                          *(signature)*

12          GREGORY KELLY                                   *(print name)*
            ☒ Plaintiff/ ☐ Defendant, *Pro Se*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

hth Judicial District Court Portal

Welcome G

Print

Case Information

party

Disposition Events

Events and Hearin

Financial

Documents

Back to top

# Disposition Events

**10/11/2018 Judgment** ▾

Judicial Officer
**Villani, Michael**

Judgment Type
**Confession of Judgment**

**Monetary Judgment**

Debtors: **Virginia E. Hickman (Defendant), Randall M. Hickman (Defendant)**

Creditors: **Gregory Kelly (Plaintiff)**

Judgment **10/11/2018** Docketed **10/18/2018**

Total Judgment: **$49,385.25**